Filed 8/4/26  Dromy v. Ozeri CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

|  |  |
|---|---|
| ELY DROMY et al., | B327150 |
| Plaintiffs and Respondents, | (Los Angeles County Super. Ct. No. 22STCV34347) |
| v. | |
| MENACHEM OZERI, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Holly J. Fujie, Judge.  Affirmed.

Law Office of Jacob Reich and Jacob Reich for Defendant and Appellant.

Wolf, Rifkin, Shapiro, Schulman & Rabkin, Brent A. Kramer and Eric A. Westlund for Plaintiffs and Respondents.

This defamation case stems from infighting at a small synagogue. Defendant and congregant Menachem Ozeri allegedly disrupted synagogue services to verbally accuse plaintiff and fellow congregant Ely Dromy of misconduct related to the synagogue and to assert plaintiff and synagogue rabbi Aharon Shaltiel is not a rabbi and has no role at the synagogue.

Based on these statements, Dromy and Shaltiel sued Ozeri for defamation. Ozeri moved to strike their complaint under California's statute limiting "SLAPPs" (Strategic Lawsuits Against Public Participation), which calls for early dismissal of meritless lawsuits if they arise from acts in furtherance of petitioning or free speech rights in connection with a public issue. (See Code Civ. Proc., § 425.16, subds. (b)(1), (e)(1)–(e)(4).) (Further undesignated statutory references are to the Code of Civil Procedure.) The trial court denied the motion, finding plaintiffs had shown their claims had minimal merit.

We affirm. But we instead conclude Ozeri failed to demonstrate the alleged statements giving rise to plaintiffs' complaint concerned a public issue or an issue of public interest.

## I.

In 1978, a small community of Los Angeles-based Yemenite Jews decided to form the Tiferet Teman synagogue. Dromy was one of the synagogue's founders. Ozeri has been with the synagogue for over 20 years. Shaltiel has served as the synagogue's rabbi since 2005.

The synagogue conducts its services out of a storefront property located in Los Angeles, which has been owned by the Kehillat Teman Nadlan Corporation ("Teman Corporation") since February 2009. Since its formation, Dromy has served on the Teman Corporation's board of directors and as its chairman.

2

The evidence does not demonstrate the synagogue's size.  It reflects, however, that usually less than 10 Yemenite Jews within the synagogue community are present for services and congregants need to ask non-Yemenite Jews from outside the community, including sometimes passersby, to reach the 10-person minyan required to conduct some gatherings.

In July 2022, a notarized letter signed by Ozeri and four other synagogue congregants, including Yehiel Gubani, Shmuel Shaaltiel, and Moshe Arussi, appeared on the synagogue's bulletin board.  The letter's signatories claimed to be "the board members for Tiferet Teman Synagogue . . . [a]lso known under the name Kehil[l]at Teman Nadlan Corp," even though none of them had been appointed to serve as such per the Teman Corporation's bylaws.

Soon thereafter, Ozeri and three of the other letter signatories allegedly disrupted services several times by verbally accusing Dromy of using the Teman Corporation to illegally launder money, of stealing money from the Teman Corporation for his personal use, of falsely holding himself out as a board member, and of illegally taking title to the synagogue property.  In addition, during synagogue services, these congregants allegedly yelled out that Shaltiel is not a rabbi and has no role at the synagogue.

Subsequently, plaintiffs sued Ozeri and the other alleged disruptors, Gubani, Shmuel Shaaltiel, and Arussi for defamation, alleging the oral statements they made during services were false and caused them reputational and emotional harm.  Ozeri and Arussi responded by moving to strike the complaint under the anti-SLAPP statute.

The trial court denied the anti-SLAPP motion. The court first rejected the moving defendants' contention that the speech in question fell within section 425.16, subdivision (e)(2), based on the remarks' asserted relation with a former congregant's 2003 lawsuit that concerned a dispute over the synagogue's control and management. (Neither plaintiff in this case was a party.) Because the lawsuit was dismissed in 2006, 16 years before the moving defendants allegedly uttered the statements underlying the present case, the court found their remarks were not connected to an issue currently or imminently pending review in a judicial proceeding.

The trial court, however, agreed with the moving defendants that the alleged statements were protected under section 425.16, subdivision (e)(3) and (4). On this point, the court noted the moving defendants showed "there are over 10,000 Jewish Yemenite people in California," "[t]he Synagogue was founded to be open to anyone wanting to participate (including participants who are not Yemeni Jews), and the Synagogue hosts lectures in addition to religious services." Given this, and that the speech in question concerned a longtime dispute over the management and control of the Teman Corporation and the synagogue, the trial court found the "Moving Defendants' alleged speech concerns a matter of public interest."

Accordingly, the trial court considered whether plaintiffs demonstrated their claims bore minimal merit. In concluding plaintiffs carried their burden, the court found their evidence showed the statements constituted defamation per se, as they charged Dromy with illegal conduct and generally undermined both plaintiffs' professional qualifications. It also found

4

unpersuasive the moving defendants' contention that the statements constituted unactionable opinions.

The moving defendants timely appealed. Following Arussi's death while this appeal was pending, Ozeri informed this court of his intent to pursue the appeal on his own.

## II.

"The anti-SLAPP statute is 'designed to protect defendants from meritless lawsuits that might chill the exercise of their rights to speak and petition on matters of public concern. [Citations.] To that end, the statute authorizes a special motion to strike a claim "arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue." (§ 425.16, subd. (b)(1).)' " (*Bonni v. St. Joseph Health System* (2021) 11 Cal.5th 995, 1008–1009 (*Bonni*).)

"Litigation of an anti-SLAPP motion involves a two-step process. First, 'the moving defendant bears the burden of establishing that the challenged allegations or claims "aris[e] from" protected activity in which the defendant has engaged.' [Citation.] Second, for each claim that does arise from protected activity, the plaintiff must show the claim has 'at least "minimal merit." ' [Citation.] If the plaintiff cannot make this showing, the court will strike the claim." (*Bonni*, *supra*, 11 Cal.5th at p. 1009.)

We review the trial court's ruling on an anti-SLAPP motion de novo. (*Balla v. Hall* (2021) 59 Cal.App.5th 652, 671.) Accordingly, " ' "we apply our independent judgment, both to the issue of whether the cause of action arises from a protected activity and whether the plaintiff has shown a probability of

5

prevailing on the claim." ' " (*Ibid.*)  And although our review is de novo, the "appellant still bears the ' "burden of affirmatively demonstrating error." ' " (*Ibid.*)

## A.

As discussed above, in denying Ozeri's anti-SLAPP motion, the trial court found his alleged statements were protected activity, but plaintiffs showed their claims had minimal merit.  In seeking reversal, Ozeri insists we cannot address the trial court's ruling on the anti-SLAPP analysis's first prong, and must limit our review to the court's conclusion on the second prong.  This is so, says Ozeri, because plaintiffs failed to file a cross-appeal.

Ozeri is mistaken.  Although a respondent who fails to appeal a judgment generally cannot urge error, an exception to this rule permits a respondent to seek, "without appealing from [the] judgment," review of "any intermediate ruling, proceeding, order or decision which involves the merits or necessarily affects the judgment or order appealed from" to enable the appellate court to "determin[e] whether or not the appellant was prejudiced by the error or errors upon which he relies for reversal . . . ." (§ 906.)  This exception "allow[s] a respondent to assert a legal theory that would result in affirming a judgment even though the trial court did not rely on that theory." (*Hong Sang Market, Inc. v. Peng* (2018) 20 Cal.App.5th 474, 487.)

We therefore address plaintiffs' contention that, regardless of the trial court's conclusion on prong two of the anti-SLAPP analysis, affirmance is required because the court erred by finding Ozeri carried his burden on prong one.

## B.

Ozeri failed to demonstrate the statements at issue are protected by the anti-SLAPP statute.

6

In the trial court, Ozeri apparently relied on section 425.16, subdivision (e)(2), (3), and (4), to demonstrate the speech at issue constitutes protected activity.

**1.**

Ozeri has not met his burden to show his allegedly defamatory statements fall within the scope of section 425.16, subdivision (e)(2).

Section 425.16, subdivision (e)(2), protects "any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law . . . ." (§ 425.16, subd. (e)(2).) On appeal, Ozeri does not renew his argument that his statements come within subdivision (e)(2) because they relate to a prior lawsuit. Indeed, his appellate briefs do not cite, let alone discuss, subdivision (e)(2). We, therefore, treat the issue as forfeited. (See *Golden Door Properties, LLC v. County of San Diego* (2020) 50 Cal.App.5th 467, 554–555 [even where our review is de novo, it " ' "is limited to issues which have been adequately raised and supported in" ' " the appellant's briefs, and " ' "[i]ssues not raised in an appellant's brief are deemed [forfeited] or abandoned" ' "].)

We acknowledge that Ozeri, in passing and without citing section 425.16, subdivision (e)(2), suggests the anti-SLAPP statute should protect the alleged statements because synagogue congregants frustrated with Dromy's leadership and conduct "may contemplate suit" against him in the future. This passing, undeveloped argument without citation to authority, however, does not adequately raise the issue for our consideration. (*E.I. v. El Segundo Unified School Dist.* (2025) 111 Cal.App.5th 1267, 1289.)

7

Forfeiture aside, the anti-SLAPP statute is not so broad. It "contemplate[s] an ongoing — or, at the very least, immediately pending — official proceeding." (*Rand Resources, LLC v. City of Carson* (2019) 6 Cal.5th 610, 627.) "[I]f an issue is not presently 'under consideration or review' by such authorized bodies, then no expression — even if related to that issue — could be 'made in connection with an issue under consideration or review.' " (*Ibid.*) " '[U]nder consideration or review' does not mean any issue a [deliberative] body may conceivably decide to take up months or years in the future." (*Ibid.*) Ozeri's claim that unspecified synagogue congregants "may contemplate suit" does not meet this standard, nor has Ozeri shown that, when he made the statements, congregants were "seriously and in good faith contemplating litigation" on issues to which the statements relate. (*Neville v. Chudacoff* (2008) 160 Cal.App.4th 1255, 1259; see also *id.* at p. 1268 ["if a [pre-litigation] statement 'concern[s] the subject of the dispute' and is made 'in anticipation of litigation "contemplated in good faith and under serious consideration" ' [citations] then the statement may be petitioning activity protected by section 425.16"].) Ozeri, in his briefing, discusses only the possible contemplation of suit without describing its contours. (See *Nirschl v. Schiller* (2023) 91 Cal.App.5th 386, 401–402 ["Protection of prelitigation statements 'only arises at the point in time when litigation is no longer a mere possibility, but has instead ripened into a *proposed proceeding* that is actually contemplated in good faith and under serious consideration as a means of obtaining access to the courts for the purpose of resolving the dispute' "]; *People ex rel. Fire Ins. Exchange v. Anapol* (2012) 211 Cal.App.4th 809, 824 [even "hollow *threats of litigation* are not protected" (italics added)].)

8

Four years on from the alleged 2022 statements, no evidence of any relevant suit is before us.  It was Ozeri's burden to show subdivision (e)(2) applies, and he has not met that burden.

**2.**

Nor has Ozeri met his burden to show his allegedly defamatory statements come within the scope of section 425.16, subdivision (e)(3) and (4).

Section 425.16, subdivision (e)(3), protects "any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest . . . ." (§ 425.16, subd. (e)(3).)  Subdivision (e)(4), the anti-SLAPP statute's "catchall provision" (*Geiser v. Kuhns* (2022) 13 Cal.5th 1238, 1243 (*Geiser*)), protects "any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest."  (§ 425.16, subd. (e)(4).)

To determine whether speech is in connection with a public issue or an issue of public interest under section 425.16, subdivision (e)(3) or (4), we ask what " 'public issue or . . . issue of public interest' the speech in question implicates . . . .  [Citation.] Second, we ask what functional relationship exists between the speech and the public conversation about some matter of public interest."  (*FilmOn.com Inc. v. DoubleVerify Inc.* (2019) 7 Cal.5th 133, 149–150; see *Doe v. Ledor* (2023) 97 Cal.App.5th 731, 744; *Bernstein v. LaBeouf* (2019) 43 Cal.App.5th 15, 22.)  Throughout, context matters.  (*Geiser*, *supra*, 13 Cal.5th at p. 1252.)

In deciding whether a public issue or a matter of public interest is implicated, courts consider several factors, including whether:  "1. The statement concerns a person or entity in the public eye; [¶] 2.  the statement concerns conduct that could

9

directly affect a large number of people beyond the direct participants; [¶] 3. the statement concerns a topic of widespread public interest; [¶] 4. the issue is of concern to a substantial number of people; or [¶] 5. the issue has been the subject of extensive media coverage." (*Dubac v. Itkoff* (2024) 101 Cal.App.5th 540, 549 (*Dubac*).) Several of these factors "stress the significance of how *many* people are affected by, or are interested in, a purportedly public issue." (*Ibid*.) Contextual factors may include "the identity and number of speakers, the audience, the location of the communication, and the purpose and timing of the communication." (*Ibid*., italics omitted; see also *Geiser*, *supra*, 13 Cal.5th at p. 1241 ["Language, of course, cannot be interpreted apart from context, and what a particular statement or act is 'about' often cannot be discerned from words alone"].)

Applying these principles and the panoply of case-specific factors, we conclude Ozeri has not shown his allegedly defamatory statements were in connection with a public issue or a matter of public interest. With respect to his speech's content, Ozeri asserted Shaltiel is not a rabbi and has no role at the synagogue. As to Dromy, Ozeri accused him of laundering money through and stealing money from the Teman Corporation, falsely holding himself out as a board member, and illegally acquiring title to the synagogue property. These statements stem from a dispute within the synagogue community relating to the legitimacy and integrity of the synagogue's religious leader and one of the Teman Corporation's board members. As Ozeri himself puts it in his declaration in support of his anti-SLAPP motion, it was (with our emphasis) an "*internal* struggle about the running of the synagogue" — "*internal* fights and suspicions."

10

Disputes internal to collective organizations and personal feuds do not tend to implicate the anti-SLAPP statute. (*Dubac, supra,* 101 Cal.App.5th at p. 551.) We note an accusation of criminal conduct, particularly when divorced, as here, from an ongoing criminal prosecution or investigation, does not itself establish speech in connection with a public issue. (See *Weinberg v. Feisel* (2003) 110 Cal.App.4th 1122, 1134 ["The fact that defendant allegedly was able to vilify plaintiff in the eyes of at least some people establishes only that he was at least partially successful in his campaign of vilification; it does not establish that he was acting on a matter of public interest," even when the accusations were of criminal activity]; see also *Dubac,* at p. 546 [accusations of mail fraud and "illegal antics" sent within a six-unit HOA].) If the rule were "[o]therwise, wrongful accusations of criminal conduct, which are among the most clear and egregious types of defamatory statements, automatically would be accorded the most stringent protections provided by law, without regard to the circumstances in which they were made." (*Weinberg,* at p. 1136.)

Other contextual factors surrounding Ozeri's statements suggest they did not connect to public issues or matters of public interest. Ozeri, along with three other congregants, made the statements during services held at the synagogue, which are regularly attended by no more than 10 individuals at a time. Usually, less than 10 Yemenite Jews within the community are present and congregants need to ask non-Yemenite Jews from outside the community, including sometimes passersby, to reach the 10-person minyan required to conduct some gatherings. Thus, the statements were uttered by a small group of speakers (four) to a similarly small audience (six *or fewer*) within the

11

synagogue's walls.  The statements were not made to "the general public or to a sizable portion" thereof.  (*Dubac, supra*, 101 Cal.App.5th at p. 550; cf. *Geiser, supra*, 13 Cal.5th at pp. 1243–1244 [demonstration held on a public sidewalk].)  Nor were the statements "in reaction to a specific triggering event" that captured public interest.  (*Dubac,* at p. 551; cf. *Geiser*, at p. 1253 [demonstration prompted by corporate eviction of long-time residents from their home].)  Ozeri, also, does not argue that Dromy or Shaltiel is a public figure in the public eye, nor does he point to any media coverage or broader public interest.

The record does not, as Ozeri contends, reflect the disputes over the synagogue's "governance and religious leadership impacted a far broader Yemenite Jewish community" beyond the synagogue's congregation.  Ozeri's declaration, filed in support of his anti-SLAPP motion, avers that 10,000 Yemenite Jews reside in California, and the synagogue is open to all who wish to attend its services, including non-Yemenite Jews.  But the evidence does not show people in these broader communities have expressed sustained interest in the synagogue or its programs.  Nor, moreover, does the evidence show these communities have taken any interest in the internal leadership dispute simmering beneath the allegedly defamatory statements.

We are not persuaded by Ozeri's argument that "[d]isputes concerning nonprofit governance, fiduciary responsibility, organizational control, and leadership within a community institution" necessarily "constitute matters of public concern under anti-SLAPP jurisprudence."  In support of his position, Ozeri cites *Damon v. Ocean Hills Journalism Club* (2000) 85 Cal.App.4th 468 (*Damon*).

12

*Damon* is inapplicable here.  In *Damon*, the former manager of a homeowner association for a residential community of more than 3,000 people filed a defamation complaint based on (1) homeowner-written articles, letters to the editor, and editorials published in a newsletter circulated to community members, which criticized the plaintiff's competence to manage the association and urged residents to replace him with a professional management company; (2) comments by two association board members during board meetings criticizing the plaintiff's performance and questioning his competence and veracity; and (3) a memorandum written by one of those board members discussing the plaintiff's management of the community's security department and criticizing the plaintiff's performance.  (*Damon, supra*, 85 Cal.App.4th at pp. 471–473.)  The trial court granted the defendants' motion to strike the complaint as a SLAPP, finding, among other things, defendants' speech fell within section 425.16, subdivision (e)(3).  (*Damon*, at p. 473.)

The Court of Appeal affirmed.  (*Damon, supra*, 85 Cal.App.4th at p. 471.)  In holding the statements connected to an issue of public interest, it recognized the political nature of the speech, observing the statements "concerned the very manner in which [a] group of more than 3,000 individuals would be governed" and "were made in connection with the Board elections and recall campaigns."  (*Id.* at p. 479.)  The Court of Appeal also found significant "the size of the Ocean Hills community," noting it represented "a large segment of [the] local population," as well as the Legislature's treatment of homeowner association boards as quasi-governmental entities.  (*Id.* at pp. 479–480.)

13

The present case is distinguishable in several respects. First, Ozeri has not demonstrated the Teman Corporation's board of directors " 'functions as a second municipal government' " similar to a homeowner association for a large residential community. (Cf. *Damon*, *supra*, 85 Cal.App.4th at p. 479.) Second, the challenged speech, Ozeri's alleged service-interrupting statements, did not take place during an election, as was the case in *Damon*, or propose any course of action related to such a process. And if the speech may have been "of critical importance" to the synagogue regulars, Ozeri has presented no concrete evidence of the congregation's size, let alone shown it represents "a large segment" of a local population. (*Ibid*.) The evidence shows a synagogue service size of 10 or fewer people, of whom about half were Ozeri and his co-defendants. The public interest *Damon* recognized is not present here.

Although not cited by the parties, we find *Grenier v. Taylor* (2015) 234 Cal.App.4th 471 (*Grenier*) appropriate for discussion. In *Grenier*, a pastor of a nondenominational church and his wife sued his stepson and another church member for defamation based on their comments, posted on the Internet, accusing the pastor of corruption, molesting children, and stealing money from the church. (*Id*. at pp. 476–479.) In denying the defendants' special motion to strike the complaint as a SLAPP, the trial court found the speech protected under section 425.16, subdivision (e)(3), but determined the defendants failed to demonstrate a probability of success. (*Id*. at p. 476.)

The Court of Appeal affirmed. (*Grenier*, *supra*, 234 Cal.App.4th at p. 476.) In support of its holding, it agreed with the trial court that the defendants' comments concerned an issue of public interest. (*Id*. at p. 483.) The Court of Appeal

14

observed the issues raised by the statements — namely, the pastor's theft and misuse of church funds, as well as other behavior on his part calling into question his character and fitness to serve as the church's spiritual and moral leader — were of interest to the church's membership, a community consisting of between 500 and 1,000 people, and, thus, "large enough to qualify as a 'community' for purposes of section 425.16." (*Ibid.*) But more than this, because the defendants posted the comments on the Internet, the Court of Appeal found their remarks "analogous to consumer protection information," as they sought to warn people away from attending the pastor's church and thereby "provided . . . aid [to] consumers choosing among churches . . . ." (*Ibid.*) Also, the comments extended beyond the pastor's church, and raised issues with child molestation and abuse in other churches within an umbrella organization. (*Ibid.*) Thus, the Court of Appeal reasoned, the statements also concerned "allegations of abuse by members of the clergy and the protection of children," which are "issues of public interest." (*Ibid.*)

We acknowledge that, similar to some of the comments by the *Grenier* defendants, Ozeri's statements raise concerns with a religious institution's leadership. But the similarities end there. As noted above, Ozeri has not shown the size of the synagogue community, which the evidence suggests is quite small. Regardless, Ozeri has not demonstrated his alleged defamatory statements were shared with the public or in public, or that those statements aided the public in "choosing among" synagogues. (Cf. *Grenier, supra,* 234 Cal.App.4th at p. 483.) Again, the evidence reflects Ozeri and his co-defendants made the alleged statements during a small religious gathering to perhaps six others. Moreover, Ozeri's remarks concerned only the

15

synagogue's leadership and did not address issues relating to other nonprofits or institutions or the hot-button public safety issue of protecting children from molestation.  Using *Grenier*, then, as a guidepost by which to compare the facts in this case, we remain convinced Ozeri's statements do not implicate a public issue or an issue of public interest.

Finally, Ozeri appears to argue his statements should receive anti-SLAPP protection because Dromy and Shaltiel each seek $500,000 in damages.  Ozeri, however, cites no legal authority demonstrating the amount of relief sought determines or otherwise bears upon whether speech implicates an issue of public interest.  We, consequently, treat it as forfeited and decline to consider it further.  (See *L.O. v. Kilrain* (2023) 96 Cal.App.5th 616, 619–620 [appellate courts are not required to "search . . . the law books to test [an appellant's] claim" and may treat points unsupported by citations to legal authority as forfeited].)

In sum, we conclude Ozeri failed to carry his burden of demonstrating the statements underlying plaintiffs' defamation claims concern a public issue or a matter of public interest.  Thus, Ozeri has not shown the statements fall within section 425.16, subdivision (e)(3) or (4).

## DISPOSITION

We affirm the order denying Ozeri's anti-SLAPP motion and award plaintiffs their costs on appeal.


SCHERB, J.


We concur:



STRATTON, P. J.



WILEY, J.